FILED
Clerk
District Court

ju̇rị̇ — ...

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JUSTIN A. FUNKUGUB,

Defendant.

Case 1:12-CR-00001

**MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant's motion to suppress evidence seized pursuant to a search warrant ("Motion," ECF No. 27), as well as the Government's response (ECF No. 32) and Defendant's reply (ECF No. 34). The issues raised in the written Motion are (1) whether the warrant sufficiently described the place to be searched and (2) whether failure to leave a copy of the evidence receipt at the place searched calls for suppression of evidence. Additionally, at the evidentiary hearing on May 22–23, 2012, defense counsel challenged the description of items to be seized as overbroad. At the end of the hearing, the Court denied the Motion from the bench. However, upon closer inspection of the record, including the exhibits submitted by the parties, the Court now *sua sponte* reconsiders its initial ruling. For the reasons stated below, Defendant's motion to suppress evidence is granted.

**I.     BACKGROUND**

In the early evening of October 11, 2011, Officer Alexander Sakisat of the Department of Public Safety ("DPS") for the Commonwealth of the Northern Mariana Islands ("Commonwealth")

responded to a report of gunshots at the Borja compound in As Teo, Saipan.  The property is owned

by Frank Borja Sr.  Two of his grown children, Frank Borja Jr. ("Frank Jr.") and Ernesta Funkugub

("Ernesta"), have houses there.  Ernesta lives with her husband, the Defendant Justin Funkugub

("Funkugub").

On the scene, Officer Sakisat's investigation led him to conclude that Funkugub and Ernesta

had gotten into an argument, during which Funkugub struck Ernesta and thereafter fired several

rounds from a black Smith & Wesson .38 caliber revolver outside their house.  Ernesta gave the

police consent to search the property.  Officer Rick Reyes found the revolver under a sofa, along

with six expended shells and two live rounds.  Funkugub was arrested and taken to jail.

The next day, October 12, the lead detective on the case, John D. Cabrera, interviewed

Funkugub at the jail.  Funkugub told Det. Cabrera that he had fired six shots into a trash bin and still

had several .38 caliber rounds at the residence.  Det. Cabrera went to the Borja compound with other

DPS officers and conducted a second search of the Funkugub residence, again with the consent of

Ernesta.  The officers were looking for the ammunition Funkugub had described.  In addition to the

Funkugub residence, officers searched the house where Frank Jr. lives, as well as a free-standing

storage unit and garage.

Outside the Funkugub residence, officers photographed two bullet holes in a trash bin and

recovered two projectiles.  Underneath a table in the Funkugubs' living room, Lt. Dennis Reyes

found an empty gun case for a rifle.  Officers wished to search a locked room attached as an

extension to the back of the house.  Ernesta and Frank Jr. would not consent to a search of the locked

2

room because, they said, it was used exclusively by Funkugub. Officers did not attempt to enter the room.

On October 14, Det. Cabrera swore out a Declaration of Probable Cause in Support of the Issuance of a Search Warrant ("Declaration"). In the Declaration, Det. Cabrera states:

> . . . Affiant believes there may be more ammunition and/or unregistered and illegal firearms in that particular room ERNESTA described as the private and personal space of FUNKUGUB. Affiant also believes that probable cause exists for the issuance of a Search Warrant for that specific room. The room is described as a semi-concrete structure with tin roofing located or extending from the eastern portion of House Number 2 on ERNESTA'S property as illustrated on the attached sketch hereby incorporated by reference.

Det. Cabrera goes on to give driving directions to the property and states, "Affiant knows the residence personally and will direct searchers to the area."

Attached to the Declaration were two sketches. One, labeled JAF 96 in the Government's Exhibit U, showed the location of the Borja compound with reference to major roads in the area. The other, labeled JAF 97, showed the arrangement of five structures on the compound: a garage, a storage unit, and three residences numbered 1, 2, and 3. Det. Cabrera testified that # 3 was Frank Jr.'s, and # 2 was the Funkugub residence. He further testified that # 1 was owned by Frank Sr., that Frank Sr. had given power of attorney to Frank Jr., and that at the time of the search the Funkugubs were also using residence # 1. The locked room to which Det. Cabrera sought access is shown as attached to residence # 2. It is marked by an "X" and labeled "Room Described by Ernesta to Be Funkugub's Private Room."

A Commonwealth Superior Court judge signed the search warrant. The warrant reads, in pertinent part:

3

Proof by affidavit . . . under oath, having been made before me by **Detective John D. Cabrera,** that there is probable cause for the issuance of a search warrant for; (1) FUNKUGUB residence located in As Teo Village along As Teo Dr. The residence is described as a semi-concrete structure with tin roof. Affiant knows the residence personally and will direct searchers to the area.

As to the items to be seized, the warrant says: "There is now being concealed therein certain property, namely; **ammunition and/or illegally owned or unregistered firearms**" (original boldface emphasis). It then goes on to say:

The following property, which is,: (check category)
(x)(a)   Property the possession of which is prohibited by law; or
(x)(b)   arms or ammunitions prepared for the purpose of insurrection or riot; or
(x)(c)   Property necessary to be produced as evidence or otherwise on the trial of anyone accused of a criminal offense; or
(x)(d)   Property designated or intended for the use as, the means of committing a criminal offense

Just before noon on October 14, DPS officers executed the warrant. They arrived at the Borja compound and showed the warrant, but not the Declaration, to Frank Jr. and Ernesta. The Declaration and sketches were in Det. Cabrera's vehicle. Frank Jr. and Ernesta did not ask to see the Declaration and sketches. There was no key for the attached locked room, so officers broke in with a crowbar. Only the attached room was searched. Inside the room, officers found and seized some live .22 caliber ammunition, an empty .223 caliber magazine, and a document. They did not make out a receipt for the seized items at the scene. Later, at the police station, Det. Cabrera filled out an inventory form.

//

/

4

## II.    DISCUSSION

The Fourth Amendment of the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The usual remedy for a violation of the particularity requirement is the suppression of evidence seized during the search conducted pursuant to the defective portion of the warrant. *See United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir. 1982). Suppression is also a possible remedy for violations of the statutory regulation of searches and seizures. *See* Fed. R. Crim. P. 41(h) (permitting motions to suppress). Defendant Funkugub has alleged both constitutional and statutory infirmities with respect to the warrant and the seizure of personal property.

A. The Violation of Rule 41 Does Not Require Suppression of Evidence

Funkubug asserts that DPS officers failed to observe the notice requirements of Rule 41 of the Commonwealth Rules of Criminal Procedure. The Commonwealth rule states: "The policeman taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave a copy and receipt at the place from which the property was taken." It is clear from testimony at the hearing that DPS officers gave Frank Jr. and Ernesta a copy of the warrant at the scene but did not make out an inventory until they returned to their offices. Therefore, the question is whether the failure to leave a receipt at the Funkugub residence merits suppression of the items seized.

Funkugub is now in federal court facing federal, not Commonwealth, criminal charges. The action against him is generally controlled by the Federal Rules of Criminal Procedure. However,

because the search was carried out by Commonwealth law enforcement agents executing a warrant issued by a Commonwealth judge, the federal rules do not apply to it. *See United States v. Martinez-Garcia,* 397 F.3d 1205, 1213 (9th Cir. 2005).   Whether a federal trial court may suppress evidence because state police violated a state procedural rule, when the violation is not of constitutional magnitude, is dubious. *Cf. United States v. Brookins,* 413 Fed. Appx. 509, 513 (3rd Cir. 2011) (technical violations of state procedure do not automatically rise to level of Fourth Amendment violations).

It is not necessary to resolve that question, however, because this violation does not call for suppression of evidence.   Federal Rule of Criminal Procedure 41(f)(1)(C) is substantially the same as Commonwealth Rule 41(d).   In the Ninth Circuit, the "settled rule" is that "a purely technical violation of Rule 41 does not require the suppression of evidence otherwise legally obtained." *United States v. Ritter,* 752 F.2d 435, 441 (9th Cir. 1985).   Suppression of evidence is "rarely the proper remedy for a Rule 41 violation." *United States v. Williamson,* 439 F.3d 1125, 1132 (9th Cir. 2006).   A Rule 41 violation requires suppression of evidence only if (1) the violation is of constitutional magnitude; (2) the defendant was prejudiced, "in the sense that the search would not have occurred or would not have been so abrasive if law enforcement had followed the Rule"; or (3) officers acted in "intentional and deliberate disregard" of the rule. *Martinez-Garcia,* 397 F.3d at 1213 (internal citations omitted).

The failure to leave a receipt was not, under the circumstances of this case, a constitutional defect in the search and seizure.   Generally, Rule 41's notice provisions do not implicate the Fourth Amendment because they do not touch on the reasonableness of the search, probable cause to issue

6

the warrant, or the warrant's sufficiency. *See United States v. Simons,* 206 F.3d 392, 403 (4th Cir.

2000) (Rule 41 notice provisions ministerial in nature); *United States v. Pangburn,* 983 F.2d 449,

453–55 (2nd Cir. 1993) (notice not required by Fourth Amendment); *see also Dalia v. United States,*

441 U.S. 238, 247 (1979) ("no basis for a constitutional rule proscribing all covert entries").  In the

Ninth Circuit, a notice violation may be of constitutional magnitude if the warrant for a

"surreptitious entry" – a search of a home while the residents are away, for example – "fail[s] to

provide explicitly for notice within a reasonable, but short, time subsequent to the surreptitious

entry." *United States v. Freitas,* 800 F.2d 1451, 1456 (9th Cir. 1986) (requiring notice within seven

days). The *Freitas* exception does not apply here. The Funkugub search warrant did not authorize

surreptitious entry.  The search was not covert; officers showed the warrant to Frank Jr. and to

Funkugub's wife, Ernesta.

Defendant Funkugub was not prejudiced by the failure to leave a receipt at the scene.  A

receipt would not have allowed Frank Jr. and Ernesta to prevent officers from executing the warrant.

There is no evidence that failure to leave the receipt was part of a pattern of "abrasive" treatment by

law enforcement.

The DPS officers and detectives did not intentionally and deliberately fail to leave a receipt

with Frank Jr. and Ernesta.  Indeed, it seems never to have occurred to them that they were obligated

to do so by any rule or regulation.  Det. Cabrera testified that he did not prepare the inventory of

items seized until after he returned to his office.  DPS crime scene technician Jeffrey Bahillo

collected the items from the locked room.  He told Special Agent John Quintanilla, of the federal

Bureau of Alcohol, Tobacco, Firearms and Explosives, that he did not generate a chain of custody

for the seized items until later the same day, at his office. (Ex. NN.) He also told Special Agent Quintanilla that he does not initiate the chain of custody from the scene. (*Id.*) It should not be asking too much for state agents charged with executing search warrants to be familiar with basic procedural rules for conducting searches and seizures. Failure to follow the rules may, in isolated instances, be attributable to simple negligence. Failure to be aware of the rules can only be regarded as reckless disregard for them. In the Eighth Circuit, that would be enough to warrant suppression for a Rule 41 violation. *See United States v. Spencer,* 439 F.3d 905, 913 (8th Cir. 2006) ("exclusion is required . . . if reckless disregard of proper procedure is evident"). After the issuance of this Order, failure of local law enforcement officers to leave a receipt will not be justifiable on grounds that they did not know better.

B. The Warrant Incorporates the Declaration and Describes the Place to Be Searched With Particularity

Funkugub claims that the description of the place to be searched – the locked room attached to the Funkugub residence – is not particular enough to pass constitutional muster. On its face, the warrant appears to approve searching the whole "FUNKUGUB Residence," not the attached room.[1] However, the description of the "residence" as a "semi-concrete structure with tin roof" points specifically to the one room. If the warrant is read in conjunction with the supporting Declaration

---

[1] At the hearing, defense counsel argued that the warrant was defective because of confusion over which building in the compound was the Funkugub residence. Officer Sakisat testified that on the dates in question, the Funkugubs were staying in the "main house," residence # 1 on JAF 97, in Exhibit U. The Court finds, based on other testimony at the hearing, that it was clear that Funkugubs' residence was the building marked as residence # 2. This is the building that Ernesta gave consent to search. If this were *not* the Funkugubs' residence, then Funkugub would not have standing to challenge the search, because he would not have a reasonable expectation of privacy from government intrusion in the place searched. *See, e.g., Mancusi v. DeForte,* 392 U.S. 364, 368 (1968).

8

and sketches, the place targeted for the search is clear. The issue, then, is whether these supporting documents cure the facial deficiency in the warrant.

It is not sufficient for supporting documents, such as affidavits and attached sketches, to describe the place particularly; the warrant itself must satisfy the particularity requirement. *Groh v. Ramirez,* 540 U.S. 551, 557 (2004). However, the warrant may incorporate a supporting affidavit by reference if (1) "the warrant uses appropriate words of incorporation" and (2) "the supporting document accompanies the warrant." *Id.* at 557–58.

Express language in the warrant stating that it is issued on the basis of a sworn affidavit supporting probable cause constitutes "suitable words of reference" to incorporate the affidavit. *United States v. SDI Future Health, Inc.,* 568 F.3d 684, 699–700 (9th Cir. 2009). The phrase "Upon the sworn complaint made before me there is probable cause . . ." has been found to suffice as words of reference. *United States v. Vesikuru,* 314 F.3d 1116, 1120 (9th Cir. 2002). If the affidavit is incorporated, the trial court "evaluate[s] the affidavit and the warrant as a whole, allowing the affidavit to 'cure' any deficiencies in the naked warrant." *Id.* at 699.

The Funkugub warrant incorporated the Declaration by reference. The warrant says, "Proof by affidavit . . . under oath, having been made before me . . . , that there is probable cause . . ." This is similar to the phrasing that the Ninth Circuit found adequate in *Vesikuru,* 314 F.3d at 1120. Standing alone, these words might not suffice. As the *Vesikuru* court observed, there are "no required magic words of incorporation." *Id.* at 1121. The Funkugub warrant also states, however, that the "Funkugub residence . . . is described as a semi-concrete structure with tin roof." It thus

9

refers to a description ("is described as") to be found in another document. The limited description on the face of the warrant agrees with the Declaration's detailed description of the attached room.

If the Declaration is incorporated, so are the sketches. The Declaration expressly incorporated them, not only by so declaring but also by directly referring to "House Number 2" in the second sketch. Thus, the first part of the *Groh* incorporation test is satisfied.

To meet the second *Groh* requirement, the affidavit must accompany the warrant. Failure of the search team to give a copy of the affidavit to the defendant or the property owners does not, however, defeat the propriety of the search. *See SDI Future Health*, 568 F.3d at 700–701 (part III(A)(2)). It is only necessary for the affidavit to be available to officers while they are conducting the search, so that "the discretion of the officers executing the warrant is limited." *Id.* at 701 (quoting *United States v. Towne*, 997 F.2d 537, 548 (9th Cir. 1993)).

As testimony at the hearing made clear, the Declaration and sketches were in Det. Cabrera's vehicle and available for DPS officers to refer to in the course of the search. Det. Cabrera directed the search, as he promised the issuing judge he would do, and it is undisputed that the officers searched only the targeted room. Therefore, both prongs of the test for incorporation are satisfied.

Moreover, and perhaps as important, the facts as developed in the exhibits and testimony show that adequate precautions were taken to ensure that no arbitrary and unreasonable invasion of Defendant's privacy would occur. *See Towne*, 997 F.2d at 548. In this respect, the purposes of the warrant requirement were fulfilled in this search.

//

/

C.  The Warrant's Description of the Items to Be Seized Is Constitutionally Deficient

In the hearing, but not in his moving papers, Funkugub asserted that the warrant's description of the items to be seized was overbroad.  Sometimes, defects in police procedure first come to light when an officer testifies at a hearing.  That was not so in this instance.  This objection to the warrant's breadth could have and should have been raised by defense counsel in the papers, so as to allow the Government a fair opportunity to respond.  Objections that may lead to suppression of evidence must be raised by the pretrial motions deadline, lest they be waived, unless the court grants relief for good cause.  *See* Fed. R. Crim. P. 12(e).  Here, at least defense counsel had timely raised the particularity of one aspect of the warrant as an issue.  In the interest of justice, the Court allowed argument on the sufficiency of the description of the items to be seized.

The Ninth Circuit has established guidelines for assessing a warrant's specificity:

> The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued[.]

*United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986) (internal citations omitted).  The warrant in question, even together with the incorporated Declaration, fails to satisfy any part of the *Spilotro* test.

/

First, probable cause did not exist to seize any and all "ammunition and/or illegally owned or unregistered firearms." Before the warrant was sought, police had already recovered the .38 caliber handgun that Funkugub discharged during the domestic incident, in addition to six expended shells and two live rounds. Funkugub had admitted to having fired six shots into a trash bin, and police had recovered two of the six projectiles. The Declaration is devoid of facts that would give rise to probable cause to believe that the locked room harbored evidence to support charges arising out of the October 11 incident and October 12 consent search.

The warrant only makes sense either as a means to confiscate any remaining contraband .38 caliber rounds, as disclosed by Funkugub on October 12, or as part of a new investigation into illegal firearms and ammunition possession or dealing. Unfortunately, the warrant proper and the Declaration are silent on this point. They do not specify the charges on which DPS was trying to build a case. One is left to discern the lawful purpose of the search from the additional facts alleged in the Declaration. They are as follows: (1) Funkugub told Det. Cabrera that the .38 was passed down from his grandfather more than twenty years ago. (2) He also told the detective that he still had several .38 caliber rounds in the house. (3) A subsequent consent search of the residence "for the ammunition FUNKUGUB had described earlier" did not turn up any .38 caliber rounds. (4) Officers found an "empty gun case for a rifle" in the living room and unspecified "drug paraphernalia" atop a cabinet in the outdoor kitchen.

If the purpose of the warrant was to locate the remaining .38 caliber ammunition that had not been found elsewhere in the residence, the warrant should have been so limited. This is not to say that other contraband could not have been confiscated as well. Under the "plain view" doctrine, if in

the course of a valid search, officers discover weapons or drugs whose character as contraband is immediately apparent, they may seize the items, even if the discovery was not inadvertent. *See Horton v. California,* 495 U.S. 128, 137–142 (1990).

If instead (or in addition), the search was in the interest of a wider investigation into illegal firearms and weapons, the warrant is similarly deficient. By Det. Cabrera's own admission, the object of the second consent search, on October 12, was limited to .38 caliber rounds. The police must have come into possession of additional information that day to support an expansion of the search to include *any* ammunition and illegal firearms. The only new facts set forth in the Declaration are the discovery of an empty rifle case and "drug paraphernalia." There is nothing in the Declaration to suggest that it is illegal for Commonwealth residents to own a rifle or ammunition for a rifle,[2] or that it was illegal for Funkugub to own a rifle. The Declaration is silent as to which firearms private citizens are prohibited from possessing in the Commonwealth.[3] Det. Cabrera does

---

[2] Under the Commonwealth Code, many .22 and .223 caliber firearms and ammunition are legal. Commonwealth law makes it illegal for private citizens to possess "any handgun, automatic weapon, or ammunition other than: (i) All .22 caliber rimfire cartridges and all regular .22 caliber rimfire cartridges[;] (ii) All .22 center-fire cartridges and .22 caliber rifles[;] (iii) All .223 caliber center-fire cartridges and .223 caliber center-fire rifles . . . [;] (iv) All .410 guage shotgun shells and .410 guage shotguns." 6 CMC § 2222(e). The .223 caliber cartridges and rifles require a special weapons permit. *Id.*

[3] In *District of Columbia v. Heller,* 554 U.S. 570 (2008), the Supreme Court found that the Second Amendment protects an individual's right to bear arms. Only two years ago, in *McDonald v. Chicago,* 561 U.S. 3025 (2010), the Court determined that this Second Amendment guarantee applies to the states. While the Court recognized that the right is not unlimited, *see Heller,* 554 U.S. at 626–27, in light of these decisions any police action to dispossess an individual of illegal or unregistered firearms in the home should clearly identify the law that private possession violates.

not set forth evidence that Funkugub owns legal firearms but has failed to register them.[4]  The Declaration does not assert that Funkugub has a status that would make it illegal for him to possess a firearm under Commonwealth law.[5]  No facts lead to a reasonable inference that Funkugub was dealing in illegal weapons.  During the consent searches, the only ammunition the police had found was for the .38 caliber handgun already confiscated.

Testimony at the motion hearing made it clear that the October 14 search was for .38 caliber ammunition only, and that police knew there was no probable cause to search for other illegal weapons.  Under questioning from the Government's attorney, Det. Cabrera stated that when he went into the locked room, he was thinking he would find the .38 caliber ammunition that Funkugub had told him was still in the house.  He stated that in the CNMI, only law enforcement officers may carry a .38 caliber handgun, and that a person needs a license to possess .22 caliber ammunition.  The Government's attorney asked Det. Cabrera if it was his belief, at the time of the search, that Funkugub did not have such a license.  The detective responded that he did not expect to find .22 caliber ammunition in the room and had no documentation indicating whether or not the ammunition was registered.

Second, the warrant fails to set forth objective standards to limit police discretion in its execution.  "The requirement that warrants shall particularly describe the things to be seized makes

---

[4] Commonwealth law requires gun owners to hold an identification card issued by DPS pursuant to regulations.  6 CMC § 2204.  The card must identify the manufacturer, model, type and serial number of the firearm.  6 CMC §2204(b)(8).

[5] Persons suffering from certain physical and mental conditions and persons convicted of certain crimes may not be issued a firearms identification card. *See* 6 CMC § 2204(e),(f).

general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States,* 275 U.S. 192 (1927). While the description does not have to be "elaborately detailed," it must be "reasonably specific" such that "the police are not . . . allowed to exercise discretion as to items to be seized." *United States v. Rodriguez,* 869 F.2d 479, 486 (9th Cir. 1989) (citing *Marron,* 275 U.S. at 196). Specificity adequate to limit officers' exercise of discretion may be achieved if the warrant "identifie[s] the alleged criminal activities in connection with which the items [are] sought." *Spilotro,* 800 F.2d at 964. As already noted, the warrant does not state the charges on which Funkugub was detained or was under investigation. It places no restriction on the type of ammunition to be seized. It gives officers no guidance as to how to determine whether any firearm they might find in the locked room is "illegally owned" or "unregistered." The warrant does not authorize seizure of particular firearms and ammunition that, through records checks and other means, law enforcement had already determined are unregistered and already established Funkugub has no right to possess.

Third, police were able to describe the items to be seized more particularly at the time the warrant was sought. Det. Cabrera had reliable information that live .38 caliber ammunition was still somewhere in the Funkugub residence. He and his officers had searched all parts of the house except the locked room. The only evidence of other firearms and ammunition was the empty rifle case. Commonwealth law does not make it illegal to own .22 and .223 caliber rifles. Det. Cabrera did not offer any reason to suspect that the rifle that fit in the empty case would be an illegal one. If this particularity problem is deemed to be cured by incorporation of the Declaration, then the only items that officers were authorized to seize were .38 caliber rounds, and seizure of other ammunition

15

was outside the scope of the warrant. Seizure of the .22 and .223 caliber materials cannot be

justified by the plain-view doctrine because their character as contraband is not immediately

apparent. Moreover, whereas the conduct of the officers in executing the warrant indicates they

understood the place of the search to be limited to the locked room, as described in the

accompanying Declaration, it shows that they did not understand the objects of the search to be

similarly limited. Thus, the warrant fails to satisfy any of the three *Spilotro* factors.

The warrant's overbreadth is confirmed by its assertion that the items to be seized may fall

into any of four generic categories of evidence. It is not apparent, from the face of the warrant and

incorporated Declaration, that possession of the items the police seized, .22 caliber live ammunition

and .223 caliber empty magazine, is "prohibited by law," or that those items were "prepared for the

purpose of insurrection or riot." It is not apparent that the seized items are "[p]roperty necessary to

be produced as evidence or otherwise on the trial of anyone accused of a criminal offense." They

seem to be immaterial to a prosecution on domestic-violence charges stemming from the October 11

incident. If the items would support some other charges, the warrant and Declaration do not say

what they are. Nor are these items clearly "designated or intended for the use as, the means of

committing a criminal offense."

The purpose of the Fourth Amendment warrant requirement is thwarted when probable cause

to search for particular items is used to pry open the door to a general search for contraband.

Without going outside the Declaration for additional facts, probable cause to authorize a search for

more than any .38 caliber ammunition was lacking. If Det. Cabrera had knowledge of other facts

that would support probable cause for a broad search for ammunition and illegal or unregistered

firearms, the detective was obliged to put them in the Declaration.  He did not do so.  The warrant, therefore, was constitutionally overbroad.

D.    The Search Was Not Conducted in Good-Faith Reliance on the Warrant

The search would be valid, nonetheless, if the executing officers relied on the warrant in good faith – that is, "in an objectively reasonable manner." *United States v. Crews,* 502 F.3d 1130, 1136 (9th Cir. 2007).   Reliance is objectively reasonable if the affidavit established a "colorable argument for probable cause." *United States v. Luong,* 470 F.3d 898, 903 (9th Cir. 2006).  An affidavit is presumptively unreasonable if (1) the affiant misled the magistrate intentionally or in reckless disregard for the truth; (2) the magistrate failed to act as a neutral and detached official and rubber-stamped the warrant; (3) the warrant is so facially deficient in detail that the officers could not reasonably presume it to be valid; or (4) the affidavit so lacks indicia of probable cause that no reasonable officer could in good faith rely on it.  *Crews,* 502 F.3d at 1136.  For probable cause, an affidavit "must establish a reasonable nexus between the crime or evidence and the location to be searched."  *Id.* at 1137.

There is no evidence that Det. Cabrera intentionally or recklessly misled the issuing judge, or that the judge acted in other than a neutral and detached manner.  However, the warrant's deficiencies in the detail with which the items to be seized are described, and the lack of probable cause to support a broad search for "ammunition and/or illegally owned or unregistered firearms," call into question the warrant's validity such that a good-faith reliance on it was not reasonable.  In the Commonwealth, it is not presumptively illegal to possess many types of .22 and .223 caliber cartridges and rifles.  *See* 6 C.M.C. § 2222(e).  The bare fact of an empty rifle case, without more,

17

does not give rise to probable cause that an illegal firearm and ammunition was in the locked room. Indeed, the confiscated .22 caliber ammunition and .223 caliber magazine were not apparent contraband under Commonwealth law and should not have been seized, even under the plain-view doctrine. Just as Det. Cabrera restricted the place he searched to the locked room where he had probable cause to search, he should have restricted the items to be seized to the .38 caliber ammunition. Therefore, the seizure cannot be saved by the good-faith reliance exception.

This lack of good-faith reliance does not mean that the officers involved in securing the warrant and executing the search were acting in *bad* faith. Det. Cabrera testified that this was the first time he had prepared an affidavit and warrant by himself. While the warrant's language is broader than the affidavit can support, the extensive testimony at the hearing indicates that every fact Det. Cabrera swore to in the Declaration was true. It also indicates, however, that local law enforcement must renew their efforts at training and supervision in the fundamentals of search-and-seizure law.

### III.    CONCLUSION

For the foregoing reasons, and upon reconsideration by the Court *sua sponte,* Defendant's Motion to Suppress is hereby GRANTED. The evidence seized by DPS officers on October 14, 2011, pursuant to the invalid warrant may not be introduced by the Government in its case in chief.

SO ORDERED this ___ day of June, 2012.

RAMONA V. MANGLONA
Chief Judge